# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS ANDREW COON, | : | Case No. 1:17-CV-125 |
|    Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| PFIZER, INC. | : | |
|    Defendant. | : | |

## ORDER DENYING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (Doc. 12)

This case is before the Court on the motion of Defendant, Pfizer, Inc. ("Pfizer") for summary judgment (Doc. 12) as well as the parties' responsive memoranda (Docs. 13, 14).

## I.     INTRODUCTION

The background facts in this products liability lawsuit are not in dispute.[1]

Mr. Coon is a 64-year-old resident of Butler County, Ohio. (Doc. 12-2 at ¶ 1). Mr. Coon has received medical care and treatment from Charles Eger, M.D. for over 20 years and continues to receive medical care from Dr. Eger. (*Id.* at ¶ 2). Dr. Eger has followed Mr. Coon for a number of chronic medical conditions, including metabolic syndrome, diabetes, sleep apnea, hypertension, and hyperlipidemia. (*Id.* at ¶ 3).

---

[1] As required by the undersigned's Standing Order RE Cincinnati Civil Procedures, Pfizer submitted a statement of proposed undisputed facts in support of its motion for summary judgment. (Doc. 12-2). Plaintiff "agrees with the Statement of Facts as provided by the Defendant." (Doc. 13-1).

On June 10, 2011, Mr. Coon presented to Dr. Eger for a wellness visit. (Doc. 12-2 at ¶ 4). Due to Mr. Coon's continuing hyperlipidemia, Dr. Eger prescribed Lipitor 10 mg., once daily. (*Id.*) Dr. Eger told Mr. Coon that if he experienced "symptoms of myalgias or muscle aching" he should "stop" taking Lipitor. (*Id.* at ¶ 5). Mr. Coon relied solely on Dr. Eger's experience and medical judgment in deciding to take Lipitor. (*Id.* at ¶ 6).

Mr. Coon's cholesterol levels decreased on Lipitor and atorvastatin, its generic counterpart, which Mr. Coon began taking in December 2011, and Dr. Eger noted that the medication was having the desired effect. (Doc. 12-2 at ¶ 7).

During a wellness exam on July 1, 2013, Dr. Eger discussed with Mr. Coon the results of recent blood laboratory testing. (Doc. 12-2 at ¶ 8). While Mr. Coon's lipid levels were still well-controlled, his laboratory results indicated abnormal liver function, and, for this reason, Dr. Eger instructed Mr. Coon to discontinue atorvastatin. (*Id.* at ¶ 9). Mr. Coon did not take Lipitor or atorvastatin again. (*Id.* at ¶ 10).

On May 6, 2015, Mr. Coon was seen by Dr. Eger for complaints of progressive quadriceps and shoulder weakness with exertion. (Doc. 12-2 at ¶ 11). Dr. Eger diagnosed Mr. Coon with proximal muscle weakness and referred him to a rheumatologist, a specialist in musculoskeletal and immune conditions. (*Id.* at ¶ 12). On May 18, 2015, Mr. Coon was seen by rheumatologist John Brian Houk, M.D., who diagnosed Mr. Coon with myopathy and referred him for a muscle biopsy. (*Id.* at ¶ 13). Based on the pathological results from the muscle biopsy, Mr. Coon was diagnosed with necrotizing myopathy. (*Id.* at ¶ 14).

Dr. Eger testified that he discussed the risk of myopathy (but not <u>necrotizing</u> myopathy) with Mr. Coon when he first prescribed Lipitor for him in June 2011. (Doc. 12-2 at ¶ 15). Dr. Eger testified that, although the current Lipitor label includes an updated warning about necrotizing myopathy, he does not warn his patients about the risk of this specific injury. (*Id.* at ¶ 16). During his deposition, Dr. Eger stated that he does not think his approach with Mr. Coon would have been different had Lipitor contained its current warning about necrotizing myopathy:

> Q. And so if this language had been in the label at the time you prescribed Lipitor to Mr. Coon, would it have changed your decision at that time?
>
> A. I think with the rarity—again, I think based on the risk benefit, I think that would not have changed my approach.

(Deposition of Dr. Eger at 113:24-114:5).[2]

## II.     STANDARD

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be

---

[2] Dr. Eger's deposition is filed at Doc. 12-4.

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III. ANALYSIS

Mr. Coon's complaint asserts one claim for inadequate product warning. Under Ohio law, a product is defective due to inadequate warning or instruction when both of the following apply:

> (a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages; [and]
>
> (b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

O.R.C. 2307.76(A)(1)(a)-(b).

Courts have restated this statutory language as imposing three elements, "each of which must be satisfied: (1) a duty to warn against reasonably foreseeable risks; (2) breach of this duty; and (3) an injury that is proximately caused by the breach." *Monroe v. Novartis Pharms. Corp.*, 29 F. Supp. 3d 1115, 1125 (S.D. Ohio 2014) (citing

4

*Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 514 (6th Cir. 2003)) (internal quotation marks omitted).

Pfizer argues it is entitled to summary judgment because Mr. Coon cannot establish the third element—proximate causation—as a matter of law. (Doc. 12-1 at 5). To establish proximate cause, the plaintiff must show that a lack of adequate warnings contributed to the plaintiff's ingestion of the drug and that the ingestion of the drug constitutes a proximate cause of the alleged injury. *Seley v. G.D. Searle & Co.*, 67 Ohio St. 2d 192, 423 N.E.2d 831, 838 (1981). Where an inadequate warning is established, "a rebuttable presumption arises that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug. *Id.*

However, that presumption is rebutted—and proximate cause does not exist—if the evidence shows that an adequate warning would have made no difference in the physician's decision as to whether to proscribe a drug or monitor the patient thereafter. *See Miller v. Alza Corp.*, 759 F. Supp. 2d 929, 936 (S.D. Ohio 2010) (citing *Seley*, 67 Ohio St. 2d at 201). Thus:

> [W]here the treating physician unequivocally testifies that s/he would have prescribed the subject drug despite adequate warnings, judgment as a matter of law is appropriate. . . . However, where the evidence does not affirmatively establish that the prescribing physician "would not have behaved differently had he received a different warning[,] a matter of credibility may exist that is "better made by the finder of fact."

*Miller*, 759 F. Supp. 2d at 936.

Here, Pfizer's motion for summary judgment is premised entirely on the argument that Mr. Coon cannot establish proximate cause in light of Dr. Eger's testimony that he did not "think" a different label "would have changed his approach" in prescribing Lipitor to Mr. Coon. (Doc. 12-1 at 5-7).

At this juncture, Pfizer's argument is not well-taken. Dr. Eger testified that, since Lipitor updated its label to add necrotizing myopathy, he is more cautious in prescribing it and monitors patients differently:

> Q. And has adding this language of the immune-mediated necrotizing myopathy, has it changed your prescribing habits?
>
> A. I think I'm probably a little more cautions about initiating statin therapy, because of just witnessing the disease process.
>
> Q. And how are you more cautious?
>
> A. Perhaps giving a little more time for lifestyle therapy, and sometimes I'll stop therapy in older patients. Say they're 90, and you think they may not have a lot of time left, not to take it from cradle to grave, type therapy, but I think just definitely much more cautious on questioning—the guy today with the wellness exam, asking him specifically in detail about myopathy and probably a little more detail-oriented on the follow up.
>
> \*\*\*
>
> Q. So, while you may be more cautious, at the end of the day, you still prescribe Lipitor?
>
> A. Yes.
>
> Q. And you said that you monitor your patients in a different way since [Mr. Coon] has developed this side effect?

6

> A. I think probably spending a little more time with more-detailed adjectives related to muscle soreness, weakness.

(Dr. Eger Dep. at 109:15-110:6, 111:16-25).

In light of this testimony, Pfizer is not entitled to summary judgment for two reasons.

First, Dr. Eger's testimony that he monitors his patients differently now allows for the inference that, had he been adequately warned, he would have changed his monitoring procedures for Mr. Coon, which may have prevented his injury. *See Monroe*, 29 F. Supp. 3d at 1126 (denying defendant's motion for summary judgment even though the treating physician testified he would still recommend the drug because evidence indicated the physician had in fact changed his monitoring habits after being adequately warned).

Second, the evidence is not <u>unequivocal</u> that Dr. Eger would have prescribed Lipitor to Mr. Coon even if adequately warned in light of Dr. Eger's testimony that his prescribing habits have since changed, and he is now more cautious about initiating statin therapy. Accordingly, it is a matter of credibility for the jury to determine whether Dr. Eger, given an adequate warning, would still have prescribed Lipitor to Mr. Coon. *See Monroe*, 29 F. Supp. 3d at 1127; *see also Williams v. Lederle Laboratories, Div. of American Cyanamid Co.*, 591 F. Supp. 381, 387 (S.D. Ohio 1984) ("What Dr. Furlong might or might not have done involves to some degree his credibility. Thus, we conclude

7

that it is for the jury to determine whether the presence of an adequate warning would have made no difference in Dr. Furlong's decision.").[3]

## IV. CONCLUSION

For the foregoing reasons, Pfizer's motion for summary judgment (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

Date: 2/14/19

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge

---

[3] Pfizer argues that Dr. Eger's new habits would not have affected his prescribing Lipitor to Mr. Coon because Dr. Eger did try lifestyle therapy first before deciding medication was necessary to treat his elevated cholesterol. (Doc. 14 at 6). This argument is not availing; it is simply not clear from the record whether this line of treatment aligns with Dr. Eger's current, admittedly more cautious, approach.